UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| EARL BATES | : | PRISONER |
| *Plaintiff,* | : | CIVIL NO. 3:02CV974(AVC)(TPS) |
| | : | |
| VS. | : | |
| | : | |
| WARDEN MYERS, ET AL. | : | |
| *Defendants.* | : | JANUARY 30, 2004 |

2004 FEB -2  P 4: 35

US DISTRICT
BRIDGEPORT

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## NOT IN DISPUTE

1). Plaintiff is currently serving a sentence for multiple counts of assault and one count of assault on a Department of Correction officer, all of which occurred at the Bridgeport Correctional Center. Affidavit of Deputy Commissioner Murphy par. 3; Plaintiff's deposition p. 9.

2). Plaintiff was housed at Northern Correctional Institution from April 10, 1995 to November 27, 2002. Affidavit of Deputy Commissioner Brian Murphy par. 4. During his incarceration, plaintiff has accumulated 112 disciplinary reports including several for assault on DOC staff. Affidavit of Brian Murphy par. 4.

3). In 1992 and 1993, when housed at the Somers Correctional Institution, plaintiff received numerous disciplinary reports attached hereto for throwing liquid substances, throwing food trays, punching and spitting at correctional staff. Affidavit of Deputy Commissioner Murphy par. 5.

4). Plaintiff received similar disciplinary reports when he was at the Walker Reception and Special Management Unit in 1993 and 1994. Affidavit of Deputy Commissioner Murphy par. 6.

5). Plaintiff's behavior did not improve, even after he was sent to the Northern Correctional Institution. Affidavit of Deputy Commissioner Murphy par. 7.

6). On August 2, 1995, when correctional staff was trying to remove plaintiff from his cell to search it, plaintiff ran out of his cell, right into the shield man, knocking him over. Affidavit of Deputy Commissioner Murphy par. 7.

7). On November 23, 1995, plaintiff grabbed correctional officer Trombly's hand through his food trap. Affidavit of Deputy Commissioner Murphy par. 8.

8). On December 26, 1996, when Correctional Officer Catania was attempting to remove inmate Bates' handcuffs through the food trap, inmate Bates's left cuff was removed and then inmate Bates suddenly pulled the handcuff set attached to his right arm into his cell. Affidavit of Deputy Commissioner Murphy par. 9. Inmate Bates then punched Correctional Officer Catania through the open cuff slot. Affidavit of Deputy Commissioner Murphy par. 9.

9). On December 29, 1996, plaintiff placed his hands on the open food trap, and refused to allow the officers to close the food trap. Affidavit of Deputy Commissioner Murphy par. 10.

10). On January 22, 1997, plaintiff spit at a disciplinary hearing officer at the end of a disciplinary hearing. Affidavit of Deputy Commisioner Murphy par. 11.

11). On February 18, 1998, correctional staff sought to search plaintiff's cell. Affidavit of Deputy Commissioner Murphy par. 12. Plaintiff refused to back up to his food trap to allow himself to be handcuffed so that he could be removed from his cell so that it could be searched. Affidavit of Deputy Commissioner Murphy par. 12.

12). On June 3, 1998, plaintiff reached through his food trap, grabbed a disciplinary report off of the disciplinary investigator's clipboard, ripped it apart, and then struck the disciplinary investigator twice in the mid section. Affidavit of Deputy Commissioner Murphy par. 13.

13). On June 16, 1998, plaintiff spit at and scratched Correctional Officer Kennedy and Correctional Officer Wiener. Affidavit of Deputy Commissioner Murphy par. 14.

14). On June 15, 1999, plaintiff punched a correctional officer in the jaw during passive recreation. Affidavit of Deputy Commissioner Murphy par 15.

15). On June 1, 2000, during trash collection, inmate Bates placed his arm through the food trap and refused to remove it. Affidavit of Deputy Commissioner Murphy par. 16.

16). On June 2, 2000, inmate Bates, again refused to remove his arms from his food trap. Affidavit of Deputy Commissioner Murphy par. 17.

17). On June 2, 2000, inmate Bates struck and kicked a Canine Officer several times on the face, head, and left knee during a cell extraction. Affidavit of Deputy Commissioner Murphy par. 18.

18). On August 18, 2000, plaintiff jumped up on top of his bunk and tried to assault a correctional officer after slipping one of his handcuffs. Affidavit of Deputy Commissioner Murphy par. 19. Plaintiff raised the arm that still had a cuff attached to it with the loose cuff that could be used as a weapon. Affidavit of Deputy Commissioner Murphy par. 19.

19). On October 5, 2000, inmate Bates reached through his food trap and grabbed the food cart and pulled it towards his cell door. Affidavit of Deputy Commissioner Murphy par. 20. Inmate Bates then took a food tray off the cart and threw it at a correctional officer. Affidavit of Deputy Commissioner Murphy par. 20.

20). On May 16, 2001, plaintiff broke free of an escort by two correctional officers and began kicking and screaming, striking one of the correctional officers in the leg. Affidavit of Deputy Commissioner Murphy par. 22.

21). A few minutes later, plaintiff spit at two Correctional officers while being place in in-cell restraints. Affidavit of Deputy Commissioner Murphy par. 21.

22). On June 29, 2001, plaintiff refused to allow correctional staff to remove handcuffs from him. Affidavit of Deputy Commissioner Murphy par. 23.

23). On March 14, 2002, when Lt. Lloyd was attempting to secure plaintiff's food trap, plaintiff kicked/pushed the cell trap door open causing an injury to the lieutenant's right index finger. Affidavit of Deputy Commissioner Murphy par. 24.

24). On July 22, 200, when Correctional Officer Pino was attemping to remove plaintiff's restraints, plaintiff head butted him. Affidavit of Deputy Commissioner Murphy par. 25.

25). On August 13, 2002, plaintiff repeatedly punched inmate Vines and attempted to stab him with a pen. Affidavit of Deputy Commissioner Murphy par. 26.

26). Plaintiff was confined in Phase I of the administrative segregation program from April 10, 1995 to May 24, 1996, July 3, 1996 to September 9, 1997, February 13, 1998 to January 8, 1999, June 14, 1999 to February 26, 2001, April 24, 2001 to October

9, 2001, March 14, 2002 until November 27, 2002. Affidavit of Deputy Commissioner Murphy par. 27-32; RT 60 Inmate Movement Sheet attached hereto.

27). Plaintiff was sent back to Phase I on July 3, 1996 for having the person with whom he was speaking on the telephone, call or patch in an unknown and unauthorized third party at a different telephone number. Plaintiff was sent back to Phase I on February 13, 1998, for threatening and/or sexually harassing a female nurse. Plaintiff was sent back to Phase I on June 14, 1999 after threatening to kill two correctional officers and for threatening a lieutenant. On April 24, 2001, plaintiff was sent back to Phase I for masturbating in front of a female staff member. Plaintiff was sent back to Phase I on March 14, 2002 for pushing/kicking a food trap door open, injuring a lieutenant's finger. Affidavit of Deputy Commissioner Murphy par. 28-32.

28). During the time that plaintiff was confined at Northern, inmates in Phase II recreated in handcuffs only for the first thirty days that they were in Phase II. If there were no incidents with the inmate, the handcuffs would be removed and the inmate would recreate without restraints. Affidavit of Deputy Commissioner Murphy par. 33.

29). Given all of plaintiff's disciplinary violations, in Deputy Commissioner Murphy's professional opinion, it was appropriate for plaintiff to recreate in full restraints during the time period that he was in Phase I of the administrative segregation program at Northern. Affidavit of Deputy Commissioner Murphy par. 34.

30). When plaintiff was housed at Northern Correctional Institution, he used to do one hundred to two hundred jumping jacks in his cell, every other day. Plaintiff's deposition p. 68.

5

31). Plaintiff also used to do about two to three hundred kicks or jumps in his cell. Plaintiff's deposition p. 68.

32). In addition, plaintiff would do about one hundred or two hundred sit-ups in his cell every other day. Plaintiff's deposition p. 69.

33). Plaintiff also did one hundred to two hundred push-ups every other day. Plaintiff's deposition p. 69.

34). Plaintiff had previously filed a claim with the State of Connecticut Claims Commissioner alleging that he was denied recreation from April 11, 1995 to May 17, 1996, July 3, 1996 to September 4, 1997, February 12, 1998 to January 7, 1999. See Claim number 18065.

35). In this claim, plaintiff alleged that during the time periods that he was in Administrative Segregation Phase I, he was denied proper recreation. See Claim number 18065.

36). Plaintiff withdrew this claim pursuant to a settlement agreement he had with the Attorney General's office. See letter to Commissioner Smith dated January 10, 2001 and attached release; plaintiff's deposition p. 30-31.

The release provides:

KNOW ALL MEN BY THESE PRESENTS, that EARL BATES does... for and in consideration of the sum of $3,300.00 and the provision of one telephone call per month to his mother while incarcerated, received from the State of Connecticut, herewith release and forever discharge... the state of Connecticut, Department of Correction and the all other present and former officers, employees and agents of the State of Connecticut, Department of Correction and the State of Connecticut itself from **all** actions, causes of action, suits, claims, controversies, damages and demands of every nature and name, including attorney's fees and costs, which EARL BATES, his heirs, successors, assigns, and representatives ever had, now have or hereinafter can, shall or may have for, upon or by

any reason or any matter, cause or thing whatsoever from the beginning of the world to the date of this Release. . . ."

Plaintiff's release.

37). Plaintiff's attorney, Gerald Dwyer, accepted the check made payable to Earl Bates on January 25, 2001. See attached check.

38). The only grievance plaintiff filed between December 2000 and November 27, 2002, challenging the fact that he recreated in restraints was a grievance dated April 15, 2002. Affidavit of Robyn DiGennaro[1] par. 4.

39). This grievance was denied on May 3, 2002. Affidavit of Robyn DiGennaro par. 4.

40). Plaintiff never appealed the denial of the grievance to Level II, the next level available to him. Affidavit of Robyn DiGennaro par. 5.

41). According to plaintiff, he made it to Phase III on three occasions. Plaintiff's deposition p. 48.

42). As a result of recreating in handcuffs and leg irons he sustained cuts and scratches to his ankles, wrists and pain in his shoulders after being in restraints for twenty minutes. Plaintiff's deposition p. 86-88. According to the plaintiff, he would experience the pain in his shoulders only during recreation. Plaintiff's deposition p. 86-88. According to the plaintiff these were the only physical injuries he sustained. Plaintiff's deposition p. 86-88.

---

[1] A faxed copy of Ms. DiGennaro's affidavit is attached hereto. The original will be filed with the court upon the undersigned's receipt of it.

DEFENDANTS,
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Ann E. Lynch
Assistant Attorney General
Federal Bar No. ct08326
110 Sherman Street
Hartford, CT  06105
Telephone No.: (860) 808-5450
Fax No. (860) 808-5591
E-mail: ann.lynch@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage parepaid this 30th day of January 2004, to:

Earl Bates
#179696
Garner Correctional Institution
50 Nunnawauk Road
Newtown Ct  06470

_____
Ann E. Lynch
Assistant Attorney General