UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| EARL BATES<br>*Plaintiff,* | : | PRISONER   2004 FEB -2  P 4: 35<br>CIVIL NO. 3:02CV974(AVC)(TPS) |
| VS. | : | US DIST<br>BRIDG |
| WARDEN MYERS, ET AL.<br>*Defendants.* | : | JANUARY 13, 2004 |

### AFFIDAVIT OF DEPUTY COMMISSIONER BRIAN MURPHY

The undersigned, being duly sworn, hereby deposes and says:

1) I am over the age of eighteen and believe in the obligations of an oath.

2). I am the Deputy Commissioner of Correction in charge of operations. Attached hereto is a copy of my curriculum vitae. As the Deputy Commissioner, I am duly familiar with the facts set forth below.

3). Plaintiff is currently serving a sentence for multiple counts of assault and one count of assault on a Department of Correction officer, all of which occurred at the Bridgeport Correctional Center. See mittimus from CR3-77378 attached hereto as Exhibit A-1.

4). Plaintiff was housed at Northern Correctional Institution from April 10, 1995 to November 27, 2002. During his incarceration, plaintiff has accumulated 113 disciplinary reports including several for assault on DOC staff.

5). In 1992 and 1993, when housed at the Somers Correctional Institution, plaintiff received numerous disciplinary reports, attached hereto as exhibits A-2-J, for throwing liquid substances, throwing food trays, punching and spitting at correctional staff.

6). Plaintiff received similar disciplinary reports when he was at the Walker Reception and Special Management Unit in 1993 and 1994, attached hereto as exhibits K-N.

7). Plaintiff's behavior did not improve, even after he was sent to the Northern Correctional Institution. More specifically, on August 2, 1995, when correctional staff was trying to remove plaintiff from his cell to search it, plaintiff ran out of his cell, right into the shield man, knocking him over. See disciplinary report attached hereto as exhibit O.

8). On November 23, 1995, plaintiff grabbed correctional officer Trombly's hand through his food trap. See disciplinary report attached hereto as exhibit P.

9). On December 26, 1996, when Correctional Officer Catania was attempting to remove inmate Bates' handcuffs through the food trap, inmate Bates's left cuff was removed and then inmate Bates suddenly pulled the handcuff set attached to his right arm into his cell. See disciplinary report attached hereto as exhibit Q. Inmate Bates then punched Correctional Officer Catania through the open cuff slot. See disciplinary report attached hereto as exhibit Q.

10). On December 29, 1996, plaintiff placed his hands on the open food trap, and refused to allow the officers to close the food trap. See disciplinary report attached hereto as exhibit Q-2.

11). On January 22, 1997, plaintiff spit at a disciplinary hearing officer at the end of a disciplinary hearing. See disciplinary report attached hereto as exhibit R.

12). On February 18, 1998, correctional staff sought to search plaintiff's cell. See disciplinary report attached hereto as exhibit S. Plaintiff refused to back up to his

food trap to allow himself to be handcuffed so that he could be removed from his cell so that it could be searched. See disciplinary report attached hereto as exhibit S.

13). On June 3, 1998, plaintiff reached through his food trap, grabbed a disciplinary report off of the disciplinary investigator's clipboard, ripped it apart, and then struck the disciplinary investigator twice in the mid section. See disciplinary reports attached hereto as exhibits T and U.

14). On June 16, 1998, plaintiff spit at and scratched Correctional Officer Kennedy and Correctional Officer Wiener. See disciplinary reports attached hereto as exhibits V and W.

15). On June 15, 1999, plaintiff punched a correctional officer in the jaw during passive recreation. See disciplinary report attached hereto as exhibit X.

16). On June 1, 2000, during trash collection, inmate Bates placed his arm through the food trap and refused to remove it. See disciplinary report attached hereto as exhibit Y.

17). On June 2, 2000, inmate Bates, again refused to remove his arms from his food trap. See disciplinary report attached hereto as exhibit Z.

18). On June 2, 2000, inmate Bates struck and kicked a Canine Officer several times on the face, head, and left knee during a cell extraction. See disciplinary report attached hereto as exhibit AA .

19). On August 18, 2000, plaintiff jumped up on top of his bunk and tried to assault a correctional officer after slipping one of his handcuffs. See disciplinary report attached hereto as exhibit BB. Plaintiff raised the arm that still had a cuff attached to it

27). Notwithstanding his egregious disciplinary history, Inmate Bates progressed to Phase II several times during his incarceration at Northern: May 24, 1996, September 9, 1997, January 8, 1999, February 26, 2001 and October 9, 2001.

28). Mr. Bates was sent back to Phase I on July 3, 1996 after receiving a disciplinary report for disobeying a direct order. More specifically, Mr. Bates had the person with whom he was speaking with telephone call a second number and conference him in. This call had not been authorized or approved.

29). Similarly, he was sent back to Phase I on February 13, 1998 after handing a nurse a grievance which said, "Don't make me grab your hands," and "See that luscious firm ass you got." And "I have been wanting to touch your hands."

30). Mr. Bates was also sent back to Phase I on June 14, 1999 after telling correctional officers that he should have killed them when he had the chance and the next chance he got, it was done. In addition, on this same day, Mr. Bates threatened a lieutenant that he had two years left and the lieutenant better watch out.

31). He was sent back to Phase I on April 24, 2001 after receiving a disciplinary report for masturbating at his cell door when a female correctional officer was at the next cell door talking to another inmate.

32). He was last returned to Phase I on March 14, 2002 after assaulting another inmate when returning from the recreation yard, and after pushing/kicking a food trap door open, injuring a lieutenant's finger.

33). During the time Mr. Bates was in Phase II, inmates recreated in handcuffs for the first thirty days, without any shackles or belly chains and if there were no incidents after thirty days, Phase II inmates recreated without restraints. Inmates in Phase III did not recreate in restraints.

34). In my professional opinion, given plaintiff's assaultive, dangerous, disruptive,

behavior, as set forth above, it was sound correctional practice to have Mr. Bates recreate in handcuffs, leg irons and a tether chain.

_____
Brian Murphy, Deputy Commissioner

Subscribed to and sworn to before me this /5th day of January 2004,

_____
Notary Public/Commissioner of
Superior Court

DEFENDANTS,
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Ann E. Lynch
Assistant Attorney General
Federal Bar No. ct08326
110 Sherman Street
Hartford, CT 06105
Telephone No.: (860) 808-5450
Fax No. (860) 808-5591
E-mail: ann.lynch@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid this 30 day of January 2004, to:

Earl Bates Inmate No. 179696
Garner Correctional Institution
50 Nunnawauk Road
Newtown Ct, 06470

_____
Ann E. Lynch
Assistant Attorney General