FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    2004 FEB -2  P 4: 35

US DIST. COURT

| | | |
|---|---|---|
| EARL BATES | : | PRISONER |
| *Plaintiff*, | : | CIVIL NO. 3:02CV974(AVC)(TPS) |
| | : | |
| VS. | : | |
| | : | |
| WARDEN MYERS, ET AL. | : | |
| *Defendants*. | : | JANUARY 30, 2004 |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**I.    FACTS**

Plaintiff brings this action under 42 U.S.C. § 1983 against defendants Warden Myers and Captain Faneuff. Plaintiff complains that during the period he was housed at Northern Correctional Institution, ("Northern") he was forced to recreate with handcuffs, leg irons and a tether chain around his waist.

Plaintiff had previously filed a claim with the State of Connecticut Claims Commissioner alleging that he was denied recreation from April 11, 1995 to May 17, 1996, July 3, 1996 to September 4, 1997, February 12, 1998 to January 7, 1999. Statement of Material Facts Not in Dispute par 31. These periods roughly correspond with the time plaintiff was in Phase I of the Administrative Segregation program at Northern. Statement of Material Facts Not in Dispute par. 26. In this claim, plaintiff alleged that during the time periods that he was in Administrative Segregation Phase I, he was denied proper recreation. Statement of Material Facts Not in Dispute par. 35. Plaintiff withdrew this claim pursuant to a settlement agreement he had with the Attorney General's office. Statement of Material Facts Not in Dispute par. 36. Because res judicata and

accord and satisfaction bar plaintiff from attempting to be compensated a second time for the same incident, summary judgment should issue in this matter.

Moreover, to the extent, the court holds that plaintiff is not barred from challenging the recreation policy at Northern after the date of his settlement, December 15, 2000, plaintiff has failed to exhaust his administrative remedies. More specifically, the only grievance plaintiff filed after December 2000 about the recreation restraint policy for Phase I inmates at Northern was a grievance dated April 15, 2002. Statement of Material Facts Not in Dispute par. 38. This grievance was denied on May 3, 2002 and plaintiff never appealed the denial of the grievance. Statement of Material Facts Not in Dispute par. 39, 40.

In addition, defendants did not violate the Eighth Amendment in having plaintiff recreate in full restraints from time to time, given plaintiff's background and behavior. More specifically, plaintiff is currently serving a sentence for multiple counts of assault and one count of assault on a Department of Correction officer, all of which occurred at the Bridgeport Correctional Center. Statement of Material Facts Not in Dispute par. 2.

Plaintiff was housed at Northern Correctional Institution from April 10, 1995 to November 27, 2002. Statement of Material Facts Not in Dispute par. 2. During his incarceration, plaintiff has accumulated 112 disciplinary reports including several for assault on DOC staff. Statement of Material Facts Not in Dispute par. 1.

In 1992 and 1993, when housed at the Somers Correctional Institution, plaintiff received numerous disciplinary reports attached hereto for throwing liquid substances, throwing food trays, punching and spitting at correctional staff. Statement of Material Facts Not in Dispute par. 3.

Plaintiff received similar disciplinary reports when he was at the Walker Reception and Special Management Unit in 1993 and 1994. Statement of Material Facts Not in Dispute par. 4.

Plaintiff's behavior did not improve, even after he was sent to the Northern Correctional Institution. Statement of Material Facts Not in Dispute par. 5. More specifically, on August 2, 1995, when correctional staff was trying to remove plaintiff from his cell to search it, plaintiff ran out of his cell, right into the shield man, knocking him over. Statement of Material Facts Not in Dispute par. 6. Similarly, on November 23, 1995, plaintiff grabbed a correctional officer's hand through his food trap. Statement of Material Facts Not in Dispute par. 7.

Plaintiff was advanced to Phase II on May 24, 1996 but was returned to Phase I on July 3, 1996 after having the person he was speaking with by telephone conference in an unknown and unauthorized third party. Statement of Material Facts Not in Dispute par. 26, 27.

On December 26, 1996, when Correctional Officer Catania was attempting to remove inmate Bates' handcuffs through the food trap, inmate Bates's left cuff was removed and then inmate Bates suddenly pulled the handcuff set attached to his right arm into his cell. Statement of Material Facts Not in Dispute par. 8. Inmate Bates then punched Correctional Officer Catania through the open cuff slot. Statement of Material Facts Not in Dispute par. 8. On December 29, 1996, plaintiff placed his hands on the open food trap, and refused to allow the officers to close the food trap. Statement of Material Facts Not in Dispute par. 9.

Plaintiff's dangerous, disruptive and disrespectful behavior continued. On January 22, 1997, plaintiff spit at a disciplinary hearing officer at the end of a disciplinary hearing. Statement of Material Facts Not in Dispute par. 10.

3

Thereafter, on September 9, 1997, plaintiff again advanced to Phase II. Statement of Material Facts Not in Dispute par. 26. However, on February 13, 1998, plaintiff was again returned to Phase I after after threatening and/or sexually harassing a female nurse. Statement of Material Facts Not in Dispute par. 27.

On February 18, 1998, correctional staff sought to search plaintiff's cell. Statement of Material Facts Not in Dispute par. 11. Plaintiff refused to back up to his food trap to allow himself to be handcuffed so that he could be removed from his cell so that it could be searched. Statement of Material Facts Not in Dispute par. 11.

A few months later, on June 3, 1998, plaintiff reached through his food trap, grabbed a disciplinary report off of the disciplinary investigator's clipboard, ripped it apart, and then struck the disciplinary investigator twice in the mid section. Statement of Material Facts Not in Dispute par. 12. Shortly thereafter, on June 16, 1998, plaintiff spit at and scratched Correctional Officer Kennedy and Correctional Officer Wiener. Statement of Material Facts Not in Dispute par. 13.

Plaintiff advanced to Phase II again on January 7, 1999. Statement of Material Facts Not in Dispute par. 26. On June 14, 1999, plaintiff was sent back to Phase I for threatening to kill two correctional officers and a lieutenant. Statement of Material Facts Not in Dispute par. 27. The next day, on June 15, 1999, plaintiff punched a correctional officer in the jaw during passive recreation. Statement of Material Facts Not in Dispute par. 14.

On June 1, 2000, during trash collection, inmate Bates placed his arm through the food trap and refused to remove it. Statement of Material Facts Not in Dispute par. 15. On June 2, 2000, inmate Bates, again refused to remove his arms from his food trap. Statement of Material Facts Not in Dispute par. 16.

4

Later that same day, on June 2, 2000, inmate Bates struck and kicked a Canine Officer several times on the face, head, and left knee during a cell extraction. Statement of Material Facts Not in Dispute par. 17. Plaintiff's disruptive, threatening and dangerous behavior continued. On August 18, 2000, plaintiff jumped up on top of his bunk and tried to assault a correctional officer after slipping one of his handcuffs. Statement of Material Facts Not in Dispute par. 18. Plaintiff raised the arm that still had a cuff attached to it with the loose cuff that could be used as a weapon. Statement of Material Facts Not in Dispute par. 18. On October 5, 2000, inmate Bates reached through his food trap and grabbed the food cart and pulled it towards his cell door. Statement of Material Facts Not in Dispute par. 19. Inmate Bates then took a food tray off the cart and threw it at a correctional officer. Statement of Material Facts Not in Dispute par. 19.

On February 26, 2001, plaintiff advanced to Phase II. Statement of Material Facts Not in Dispute par. 26. On April 24, 2001, plaintiff was sent back to Phase I for masturbating in front of a female staff member. Statement of Material Facts Not in Dispute par. 27.

On May 16, 2001, plaintiff broke free of an escort by two correctional officers and began kicking and screaming, striking one of the correctional officers in the leg. Statement of Material Facts Not in Dispute par. 20. A few minutes later, on May 16, 2001, plaintiff spit at two Correctional officers while being placed in cell restraints. Statement of Material Facts Not in Dispute par. 21. On June 29, 2001, plaintiff refused to allow correctional staff to remove handcuffs from him. Statement of Material Facts Not in Dispute par. 22.

Plaintiff advanced to Phase II on October 9, 2001. Statement of Material Facts Not in Dispute par. 26. Then, on March 14, 2002, when Lt. Lloyd was attempting to secure plaintiff's food trap, plaintiff kicked/pushed the cell trap door open causing an injury to the lieutenant's right index

finger. Statement of Material Facts Not in Dispute par. 23, 27. Plaintiff was sent back to Phase I for this action. Statement of Material Facts Not in Dispute par. 27.

On July 22, 2002, when Correctional Officer Pino was attempting to remove plaintiff's restraints, plaintiff head butted him. Statement of Material Facts Not in Dispute par. 24. On August 13, 2002, plaintiff repeatedly punched inmate Vines and attempted to stab him with a pen. Statement of Material Facts Not in Dispute par. 25.

At the time plaintiff was at Northern, inmates who were in Phase II of the Administrative Segregation Program, recreated in handcuffs only for the first thirty days. Statement of Material Facts Not in Dispute par. 28. If there were no incidents, after thirty days the handcuffs would be removed and the inmate would recreate without any restraints. Statement of Material Facts Not in Dispute par. 28.

In Deputy Commissioner Murphy's opinion, given all of plaintiff's disciplinary violations, it was sound correctional practice to have Mr. Bates recreate in handcuffs, leg irons and a tether chain, when he was in Phase I of the Administrative Segregation Program at Northern. Statement of Material Facts Not in Dispute par. 29.

In addition, plaintiff cannot prove that placing him in full restraints deprived plaintiff of the ability to exercise. To the contrary, when plaintiff was housed at Northern Correctional Institution, he used to do one hundred to two hundred jumping jacks in his cell, every other day. Statement of Material Facts Not in Dispute par. 30. Plaintiff also used to do about two to three hundred kicks or jumps in his cell. Statement of Material Facts Not in Dispute par. 31. In addition, plaintiff would do about one hundred or two hundred sit-ups in his cell every other day. Statement of Material Facts

Not in Dispute par. 32. Plaintiff also did one hundred to two hundred push-ups every other day. Statement of Material Facts Not in Dispute par. 33.

Because plaintiff was able to exercise in his cell, assaulted both staff and other inmates at times, had demonstrated an ability to slip handcuffs and/or gain control of the handcuff set, after only one handcuff was removed, it was appropriate to have plaintiff recreate in full restraints when he was in Phase I of the Administrative Segregation Program at Northern. Thus, plaintiff cannot prove that defendants violated plaintiff's constitutional rights. At a minimum, reasonable correctional staff could disagree over the propriety of having plaintiff recreate in full restraints and thus defendants have qualified immunity and summary judgment should issue in their favor.

## II.   **ARGUMENT**

### A.   **SUMMARY JUDGMENT STANDARD**

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) cert denied 480 U.S. 932, 107 S.Ct. 1570 (1987) (emphasis added). The party opposing a motion for summary judgment "may not

rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. § 56(e).

Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See, e.g., Celotex Corp. v. Catrett 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1968); H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. 1986) cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).  Thus "[w]here the record could not lead a rational trier of facts to find for the non-moving party, there is then no 'genuine issue for trial.'"  Clements v. County of Nassau, 835 F.2d 1000, 1004 (2d Cir. 1987).

The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of a summary judgment in favor of defendant.

**B.    THE ELEVENTH AMENDMENT BARS MONEY DAMAGES AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

To the extent plaintiff is seeking money damages from the defendants in the official capacities such a claim is barred by the Eleventh Amendment.  A suit against the defendants in their official capacities for money damages is in effect against the State of Connecticut and is barred by the Eleventh Amendment to the United States Constitution. Edelman v. Jordan, 415 U. S. 651, 663 reh'g denied 416 U.S. 1000 (1974).  Even if the State is not specifically named as a defendant, the State may nevertheless be the real party in interest if State funds would be used to satisfy any damage award. See, Ford Motor Co. v. Dept. of Treasury, 323 U. S. 459, 464 (1945).  Thus, when a state official is sued in his official capacity, he is an agent of the State and is therefore protected

from liability for damages by the Eleventh Amendment.  <u>Scheuer v. Rhodes</u>, 416 U. S. 232, 237-38 (1974).

There are exceptions to the above general rule, for example, when a State voluntarily waives its immunity through legislation, or where Congress has specifically abrogated this immunity to ensure the equal protection of the laws for all citizens.  <u>See</u>, <u>Fitzpatrick v. Bitzer</u>, 427 U. S. 445, 451-56 (1976).

Neither of the exceptions apply here because there is no indication that the State of Connecticut has waived its immunity and consented to be sued and, it is clear that Congress did not intend to abrogate the sovereign immunity of the states when it enacted the Civil Rights Act, 42 U.S.C. § 1983.  Accordingly, the action against the defendants in their official capacities for money damages  should be dismissed.

### C.    <u>PLAINTIFF'S ATTEMPT TO RELITIGATE CLAIMS THAT WERE PREVIOUSLY DISPOSED OF SHOULD FAIL</u>

#### 1.    <u>Plaintiff is Barred by Res Judicata from Pursuing this Action</u>

The doctrine of res judicata serves to prevent the Plaintiff from attempting to relitigate claims raised in other lawsuits that were disposed of.  The doctrine of res judicata or claim preclusion states that a final and valid judgment on the merits of a claim precludes subsequent action on that claim.

Under the Full Faith and Credit Clause of the United States Constitution, U.S. Const. Art. IV, § 1, "federal courts must accord state court judgments the same preclusive effect as other Courts within that state." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).  One Court has reasoned, "Plaintiffs simply cannot hop from judge to judge bringing actions against different defendants out of the same transaction. Such behavior is utterly at odds with the judicial repose policy." <u>Heritage Hills Fellowship v. Plouff</u>, 555 F. Supp. 1290, 1297-98 (E.D. Mich. 1983).  It is clear that a

dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes. See, e.g., <u>Nemaizer v. Baker</u>, 793 F.2d 58, 60-61 (2d Cir. 1986).

> A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action.  <u>Wainwright Securities, Inc. v. Wall St. Transcript</u>, 80 FRD 103, 105 (S.D.N.Y. 1978). <u>Such a dismissal constitutes a final judgment with the preclusive effect of "res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit."</u> <u>Heiser v. Woodruff</u>, 327 U.S. 726, 735, 90 L.Ed. 970, 66 S.Ct. 853 (1946); <u>Teltronics v. LM Ericsson Telecommunications</u>, 642 F.2d 31, 35, (2d Cir. 1981).

> <u>Id</u> (emphasis added).

To determine whether the plaintiff is barred from litigating the claims which were asserted before the State Claims Commissioner, the court looks to Connecticut law.  <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790, (2d Cir. 1994).

In  <u>McCarthy v. Warden</u>, 213 Conn. 289, 567 A.2d 1187 (1989) <u>cert denied</u> 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed 2d 667 (1990) the Connecticut Supreme Court applied the doctrine of res judicata and barred a second action brought by an inmate.  More specifically, an inmate brought a federal civil rights action challenging a disciplinary report.  The district court found in favor of the defendants.  Thereafter, the inmate filed a habeas corpus action challenging the disciplinary report and the state habeas judge refused to give the federal district court decision any preclusive effect. On appeal the Connecticut Supreme Court reversed holding:

> The petitioner argues nonetheless that res judicata is inapplicable on the ground that, even if we conclude that there was transactional identity between his federal civil rights action and his state habeas corpus action, the federal court lacked remedial authority over good time credits. This argument is based on <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 490, 93 S.Ct 1827, 36 L.Ed. 2d 439 (1973), the United States Supreme Court held that federal courts should not entertain a civil rights action under 42 U.S.C. §1983 for the restoration of good time credits. Relying on principles of comity, the court took the view that such issues should be adjudicated only in actions for habeas corpus, which would require a state prisoner first to exhaust his state court

remedies for alleged constitutional errors in prison administration. Id. 491-94. In Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct 2963, 41 L.Ed 2d 935 (1974), the United States Supreme Court construed Preiser as continuing to permit a state prisoner to challenge such alleged constitutional errors in a damages claim under 42 U.S.C. § 1983. The court held that "Preiser expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings." Id. While we agree with the petitioner that Preiser and Wolff allowed him to proceed with a civil rights damages action to test the constitutional validity of disciplinary proceedings, we are unpersuaded that the reasoning of those cases precludes the applicability of res judicata in the present litigation. The proposition that parallel proceedings in federal and state courts may expedite the vindication of constitutional rights, when administrative error has been shown to exist, does not justify relitigation of allegations of constitutional issues that have been found to be substantively groundless. Indeed, Preiser expressly states that "res judicata has been held to be fully applicable to a civil rights action brought under § 1983." Preiser v. Rodriguez, supra 497. Furthermore, Wolff notes that "normal principles of res judicata" apply to parallel federal and state challenges of state disciplinary proceedings. Wolff v. McDonnell, supra, 554 n. 12. Finally, the jurisprudential concern for comity that underlies Preiser is fully served, in this case, by applying the principle of res judicata.

Id at 296-97

"A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) Delahunty v. Massachusetts Mutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996). The doctrine of res judicata is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." Id., 591.

The doctrine of res judicata applies to decisions from the Connecticut Claims Commissioner. See Hollins v. Horn, Ruling on Motion to Dismiss, 2:91CV00893(PCD)(D.Conn. March 8, 1994)(attached).

11

. . . the Connecticut courts will give the decision preclusive effect, and a party may not relitigate the issues in a state forum.  It follows that the claim may not be relitigated in a federal forum.

Id. at p. 6.

Under Connecticut law, plaintiff cannot now pursue in federal court, claims that plaintiff made or could have made in his claim before the State of Connecticut Claims Commissioner, claim number 18065.  In this matter, plaintiff claims that he was denied recreation because he was forced to recreate in handcuffs and leg irons while in Administrative Segregation Phase I.  This Court has previously held that the plaintiff's denial of recreation claim goes back as far as September 1998.

In ruling on the defendants' motion to dismiss in June 2003, this court held:

> Construing the plaintiff's complaint liberally  as the court must when deciding a motion to dismiss, the court concludes that the plaintiff is alleging that he has been incarcerated at Northern since at least September 1998, and has been denied meaningful exercise because of the restraint  policy employed by prison officials at Northern since that time.

Bates v. Myers, Ruling on Defendants' Motion to Dismiss, June 10, 2003 (emphasis added).

In Claim 18065, plaintiff alleged that he was being denied one hour of recreation from April 11, 1995 to May 17, 1996, July 3, 1996 to September 4, 1997 and from February 12, 1998 to January 7, 1999.  Statement of Material Facts Not in Dispute par. 36.  Plaintiff withdrew this claim in January 2001, pursuant to a settlement agreement.  Statement of Material Facts Not in Dispute par. 36.  Plaintiff's settlement of claim 18065 operates as res judicata and bars the plaintiff from litigating the propriety of the restraint policy at Northern up to and including January 7, 1999.  Accordingly, summary judgment should be issued on plaintiff's claims about having to recreate in handcuffs and leg irons up to the date of January 7, 1999.

2.    Plaintiff's December 2000 Settlement Constituted an Accord and Satisfaction

The language of the release which plaintiff signed in December 2000, operated as an accord which was satisfied when plaintiff's lawyer received the funds on January 25, 2001. Statement of Material Facts Not in Dispute par. 37. Under the principles of accord and satisfaction, plaintiff is prohibited from maintaining this action based upon anything that happened prior to December 15, 2000.

"When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim." County Fire Door Corp. v. C.F. Wooding Co., 202 Conn. 277, 281, 520 A.2d 1028 (1987). "An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed." W.H. McCune, Inc. v. Revzon, 151 Conn. 107, 109, 193 A.2d 601 (1963).

Connecticut General Statutes §42a-3-311 entitled Accord and Satisfaction by use of instrument states in relevant part:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
> (b)... the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Here, the release clearly states, that the settlement was for ALL claims that plaintiff had as of the date of the settlement. More specifically, the settlement agreement states,

**KNOW ALL MEN BY THESE PRESENTS, that EARL BATES does. . . for and in consideration of the sum of $3,300.00 and the provision of one telephone call per month to his mother while incarcerated, received from the State of Connecticut, herewith release and forever discharge. . . the state of Connecticut, Department of Correction and the all other present and former officers,**

> **employees and agents of the State of Connecticut, Department of Correction and the State of Connecticut itself from all actions, causes of action, suits, claims, controversies, damages and demands of every nature and name, including attorney's fees and costs, which EARL BATES, his heirs, successors, assigns, and representatives ever had, now have or hereinafter can, shall or may have for, upon or by any reason or any matter, cause or thing whatsoever from the beginning of the world to the date of this Release. . . ."**

Statement of Material Facts Not in Dispute par. 36.  Under this release, on December 15, 2000 plaintiff agreed to waive all claims that he had as of that date against the State of Connecticut and its agents or employees, in exchange for $3,300 and a monthly phone call to his mother.  To allow plaintiff to maintain this action for allegedly having to recreate in handcuffs and leg irons prior to December 15, 2000 would be to violate the well settled accord and satisfaction doctrine and Connecticut statutory law.  Accordingly, summary judgment should issue on plaintiff's claims that he was forced to recreate in full restraints up to December 15, 2000.

### D.   PLAINTIFF CANNOT PROVE THAT THE RECREATION POLICY AS APPLIED TO HIM VIOLATED THE EIGHTH AMENDMENT

Similarly, given plaintiff's disciplinary background, it cannot be deemed an eighth amendment violation that plaintiff recreated in full restraints.

In Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994), the Supreme Court defined the standard to be applied in this case as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 1979.

In order for prison conditions to rise to the level of an Eighth Amendment violation there must "involve the unnecessary and wanton infliction of pain" which deprives inmates of the minimal necessities of life. Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981).

Recently, the Second Circuit upheld a summary judgment decision in favor of correctional defendants who deprived an inmate of everything except a pair of undershorts for almost a month after the inmate continued acting out. Trammel v. Keane, 01-0025 (2d Cir. August 1, 2003)(attached). The Second Circuit held that as the use of force was pre-planned and monitored, the appropriate standard was deliberate indifference. The court looked to the United States Supreme Court case Hope v. Pelzer, 536 U.S. 730 (2002) and said,

> . . . the Court also took into account—as one would do in an excessive force –whether the punishment was justified by "any safety concern" in the prison. . . . this case occasions no exception to the rule that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547 (1979). . . . we consider whether the Order was reasonably calculated to restore prison discipline and security and, in that purposive context, whether the officials were deliberately indifferent to Trammel's health and safety.
>
> Id at p. 17, 18.

This court has previously held that requiring inmates to wear restraints when outside their cell for showers and recreation did not constitute cruel and unusual punishment. Cousineau v. Armstrong, Ruling on the Defendants' Motion For Summary Judgment, 3:95CV1084(AVC)(D.Conn. September 23, 1998) (attached). "These decisions support this court's conclusion that Northern's requirement that the plaintiff wear restraints while outside of his cell, served the legitimate security function of maintaining prison order and preventing violence and therefore did not violate the plaintiff's Eighth Amendment rights." Id at p. 15; See also, Tillman v.

Warden, 2003 Conn. Super Lexis 530 (February 26, 2003)(attached)("The application of varying degrees of restraint, depending on the A.S. phase level, does not involve the unnecessary and wanton infliction of pain, is not grossly disproportionate to the severity of the crime and is not excessive use of physical force against inmates."); Caballero v. Warden, 2003 WL 139524 (Conn. Super. 2003)("The use of full restraints during the recreation period is, in this court's conclusion, reasonable force applied in a good faith effort to maintain discipline surrounding the petitioner, an individual who has proven his tendency to resort to violent behavior toward correction staff and other inmates.")

Here, plaintiff has demonstrated his tendency to resort to violent, threatening, disruptive behavior toward staff and other inmates. More specifically, plaintiff was housed at Northern Correctional Institution from April 10, 1995 to November 27, 2002. Statement of Material Facts Not in Dispute par. 2. Plaintiff was sent there because of his violent institutional record.

Once at Northern plaintiff did such things as run straight into staff members, as they tried to remove him from his cell, Statement of Material Facts Not in Dispute par. 6, grabbing a correctional officer's hand through his food trap, Statement of Material Facts Not in Dispute par. 7. Notwithstanding these behaviors, plaintiff was advanced to Phase II, on May 24, 1996 where he was allowed to recreate in handcuffs only for the first thirty days and thereafter, without any restraints. Statement of Material Facts Not in Dispute par. 26, 27, 28.

Plaintiff returned to Phase I on July 3, 1996 after having the person he was speaking with by telephone, call and patch in another unknown and unauthorized third party. Statement of Material Facts Not in Dispute par. 27. On December 26, 1996, when a correctional officer was attempting to remove inmate Bates' handcuffs through the food trap, inmate Bates's left cuff was removed and

16

then inmate Bates suddenly pulled the handcuff set attached to his right arm into his cell. Statement of Material Facts Not in Dispute par. 8. Inmate Bates then punched the correctional officer through the open cuff slot. Statement of Material Facts Not in Dispute par. 8. Three days later, plaintiff placed his hands on the open food trap, and refused to allow the officers to close the food trap. Statement of Material Facts Not in Dispute par. 9. On January 22, 1997, plaintiff spit at a disciplinary hearing officer at the end of a disciplinary hearing. Statement of Material Facts Not in Dispute par. 10.

Notwithstanding plaintiff's behavior, on September 9, 1997, plaintiff again advanced to Phase II. Statement of Material Facts Not in Dispute par. 26. However, on February 13, 1998, plaintiff was again returned to Phase I after threatening and/or sexually harassing a female nurse. Statement of Material Facts Not in Dispute par. 27.

On February 18, 1998, correctional staff sought to search plaintiff's cell. Statement of Material Facts Not in Dispute par. 11. Plaintiff refused to back up to his food trap to allow himself to be handcuffed so that he could be removed from his cell so that it could be searched. Statement of Material Facts Not in Dispute par. 11.

A few months later, on June 3, 1998, plaintiff reached through his food trap, grabbed a disciplinary report off of the disciplinary investigator's clipboard, ripped it apart, and then struck the disciplinary investigator twice in the mid section. Statement of Material Facts Not in Dispute par. 12. Shortly thereafter, on June 16, 1998, plaintiff spit at and scratched two correctional officers. Statement of Material Facts Not in Dispute par. 13.

Plaintiff advanced to Phase II again on January 7, 1999. Statement of Material Facts Not in Dispute par. 26. On June 14, 1999, plaintiff was sent back to Phase I for threatening to kill two

17

correctional officers and a lieutenant.  Statement of Material Facts Not in Dispute par. 27.  The next day, on June 15, 1999, plaintiff punched a correctional officer in the jaw during passive recreation. Statement of Material Facts Not in Dispute par. 14.

On June 1, 2000, during trash collection, inmate Bates placed his arm through the food trap and refused to remove it.  Statement of Material Facts Not in Dispute par. 15.  On June 2, 2000, inmate Bates, again refused to remove his arms from his food trap.  Statement of Material Facts Not in Dispute par. 16.

Later that same day, on June 2, 2000, inmate Bates struck and kicked a Canine Officer several times on the face, head, and left knee during a cell extraction.  Statement of Material Facts Not in Dispute par. 17.  On August 18, 2000, plaintiff jumped up on top of his bunk and tried to assault a correctional officer after slipping one of his handcuffs.  Statement of Material Facts Not in Dispute par. 18.  Plaintiff raised the arm that still had a cuff attached to it with the loose cuff that could be used as a weapon.  Statement of Material Facts Not in Dispute par. 18.  On October 5, 2000, inmate Bates reached through his food trap, grabbed the food cart, pulled it towards his cell door, then took a food tray and threw it at a correctional officer.  Statement of Material Facts Not in Dispute par. 19.

On February 26, 2001, plaintiff advanced to Phase II.  Statement of Material Facts Not in Dispute par. 26.  On April 24, 2001, plaintiff was sent back to Phase I for masturbating in front of a female staff member.  Statement of Material Facts Not in Dispute par. 27.

On May 16, 2001, plaintiff broke free of an escort by two correctional officers and began kicking and screaming, striking one of the correctional officers in the leg.  Statement of Material Facts Not in Dispute par. 20.  Later that same day, on May 16, 2001, plaintiff spit at two

Correctional officers while being placed in cell restraints. Statement of Material Facts Not in Dispute par. 21. On June 29, 2001, plaintiff refused to allow correctional staff to remove handcuffs from him. Statement of Material Facts Not in Dispute par. 22.

Plaintiff advanced to Phase II on October 9, 2001. Statement of Material Facts Not in Dispute par. 26. Then, on March 14, 2002, when Lt. Lloyd was attempting to secure plaintiff's food trap, plaintiff kicked/pushed the cell trap door open causing an injury to the lieutenant's right index finger, which resulted in plaintiff's return to Phase I. Statement of Material Facts Not in Dispute par. 23, 27.

On July 22, 2002, when Correctional Officer Pino was attempting to remove plaintiff's restraints, plaintiff head butted him. Statement of Material Facts Not in Dispute par. 24. On August 13, 2002, plaintiff repeatedly punched inmate Vines and attempted to stab him with a pen. Statement of Material Facts Not in Dispute par. 25.

At the time plaintiff was at Northern, inmates who were in Phase II, recreated in handcuffs only for the first thirty days. Statement of Material Facts Not in Dispute par. 28. If there were no incidents, after thirty days the handcuffs would be removed and the inmate would recreate without any restraints. Statement of Material Facts Not in Dispute par. 28.

In Deputy Commissioner Murphy's opinion, given all of plaintiff's disciplinary violations, it was sound correctional practice to have Mr. Bates recreate in handcuffs, leg irons and a tether chain, when he was in Phase I. Statement of Material Facts Not in Dispute par. 29.

In addition, plaintiff cannot prove that placing him in full restraints deprived plaintiff of the ability to exercise. To the contrary, when plaintiff was housed at Northern Correctional Institution, he used to do one hundred to two hundred jumping jacks in his cell, every other day. Statement of

Material Facts Not in Dispute par. 30.  Plaintiff also used to do about two to three hundred kicks or jumps in his cell.  Statement of Material Facts Not in Dispute par. 31.  In addition, plaintiff would do about one hundred or two hundred sit-ups in his cell every other day.  Statement of Material Facts Not in Dispute par. 32.  Plaintiff also did one hundred to two hundred push-ups every other day. Statement of Material Facts Not in Dispute par. 33.

Here, plaintiff assaulted staff many, many times while at Northern.  Having plaintiff wear restraints during recreation was justified by safety concerns for the prison staff and other inmates. According the defendants wide ranging deference in the management of plaintiff necessarily results in a summary judgment for the defendants in this case.  Defendants did not violate the Eighth Amendment, under the facts of this case in having plaintiff wear restraints from time to time at recreation.  Because plaintiff was able to exercise in his cell, assaulted both staff and other inmates at times, had demonstrated an ability to slip handcuffs and/or gain control of the handcuff set, after only one handcuff was removed, it was entirely consistent with the Eighth Amendment to place the plaintiff in full restraints for outdoor recreation during the times he was placed in such restraints.

E.   **PLAINTIFF CANNOT RECOVER COMPENSATORY DAMAGES AS HE CANNOT DEMONSTRATE AN ACTUAL PHYSICAL INJURY AS REQUIRED UNDER THE PLRA**

Here, plaintiff cannot establish that he suffered an actual physical injury that was not de minimis as a result of recreating in restraints.  Accordingly, summary judgment should issue in the defendants' favor.

The Prison Litigation Reform Act provides that "No federal civil action may be brought by a prisoner. . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Although the statute does not define "physical injury," the developing case law in this area reflects the view that, consistent with the Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than de minimis. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (physical injury required as predicate for emotional distress claim must simply be more than de minimis); Leon v. Johnson, 96 F.Supp. 2d 244, 2000 WL 674698 at *3 (W.D.N.Y. 2000) (accord); Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000).

In Warren, the plaintiff suffered two superficial scratches to his face as a result of an altercation between the plaintiff and a correctional officer. The district court held that this was a de minimis injury insufficient to base a claim for emotional distress under the PLRA. Accordingly, the plaintiff's excessive force claim was dismissed.

> The Fifth Circuit in Siglar v. Hightower, supra, offered no definition of what is a physical injury, or a de minimis injury. The only standard offered was a de minimis injury was not sufficient to carry the day. A claim by a prisoner of an injury in prison he received in an unprovoked assault or excessive use of force by the guards or a failure to protect from other inmates should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice? In the prison setting in the Texas Department of Correction Justice-Institutional Division, and in other prisons like this private prison, after an altercation the correction officers are usually required regardless of observable injuries, no injuries, etc., to take the inmate to the prison infirmary to have an examination to determine if the prisoner received any physical injury requiring professional medical care. Thus, the mere reporting of cuts and abrasions, or swollen wrists by the medical personnel does not prove the inmate has received a physical injury which would measure up to the standards set out in the current statute, 42 U.S.C. 1997e(e), and Siglar v. Hightower, supra.

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise above de minimis, would under Sigler v. Hightower, supra, require more than the types and kinds of bruises and abrasions above which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F.Supp. 481, 486 (N.D. Tex. 1997)(emphasis added) cited by Chief Judge

Walker in Concurring Opinion in Dawes v. Walker, 2001 U.S. App. LEXIS 2438 (2d Cir. 2001).

Here, at his deposition, plaintiff alleged that as a result of recreating in handcuffs and leg

irons he sustained cuts and scratches to his ankles, wrists and pain in his shoulders after being in

restraints for twenty minutes. Statement of Material Facts Not in Dispute par. 42. According to the

plaintiff, he would experience the pain in his shoulders only during recreation. Statement of

Material Facts Not in Dispute par. 42. According to the plaintiff these were the only physical

injuries he sustained. Statement of Material Facts Not in Dispute par. 42. As a matter of law, the

injuries which plaintiff experienced were de minimis and insufficient upon which to base this Eighth

Amendment action. Accordingly, summary judgment should be issued for the defendants in this

matter.

**F.      QUALIFIED IMMUNITY BARS ANY AND ALL CLAIMS FOR MONEY DAMAGES AS TO THE RECREATION IN RESTRAINTS ISSUE**

Here, because the conduct of defendants did not violate clearly established statutory or

constitutional rights, the defendants are entitled to qualified immunity.

State officials performing discretionary functions in the course of their duties are immune

from suits alleging constitutional violations "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987); Russell, supra, 910 F.2d at 78; Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989). "The objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. See, e.g., Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow, 457 U.S. at 817, 102 S.Ct. at 2738.

In analyzing a claim of qualified immunity, the Court must first determine whether the law alleged to have been violated was "clearly established" at the time the alleged actions occurred. Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 2156 (1995); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Finnegan v.

Fountain, 915 F.2d 817, 823 (2nd Cir. 1990). The Court also must decide whether it was clear at the time of the alleged violations of law that an exception did not permit the actions in question. Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989); Robison, 821 F.2d at 921. Finally, even if it concludes that the law was clearly established, the court must determine whether it was objectively reasonable for the official to believe that his actions did not violate those rights. Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994) cert. denied 513 U.S. 1076, 115 S.Ct. 721 (1995). The subjective motivation of the officials is irrelevant to the inquiry. Anderson, 483 U.S. at 641; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). Rather, the focus is on whether reasonable officials in the position of the defendants could have believed their actions were lawful. Where reasonable officials could disagree, the official is entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

Here, reasonable correctional officials in defendants position would believe that they were acting lawfully in having plaintiff recreate in restraints when he was in Phase I of the Administrative Segregation program. Handcuffing an inmate during recreation was held not to implicate any eighth amendment concerns in Cousineau v. Armstrong, Ruling on Defendant's Motion for Summary Judgment, No. 3:95CV1084(AVC) (D.Conn. September 23, 1998) (use of leg and arm restraints during his recreation did not violate the Eighth Amendment) (attached); Caballero v. Warden, 2003 WL 139524 (2003)(Having inmates recreate in shackles, cuff and tether chain did not violate the eighth amendment's prohibition against cruel and unusual punishment) (attached); Tillman v. Warden, Memorandum of Decision on Respondent's Motion for Summary Judgment and Judgment of Dismissal, Docket No. CV-02-3659–S (February 26, 2003) (Having inmates recreate in shackles, cuff and tether chain did not violate the eighth amendment's prohibition against cruel and unusual

punishment) (attached); <u>Mundy v. Warden</u>, Memorandum of Decision, Docket No. CV-95-2016-S

(Bishop, J. December 22, 1995) (attached);  <u>See also</u> <u>Figuerora v. Lopes</u>, Ruling on Cross Motions

for Summary Judgment, H-86-706, p. 14 (D.Conn. March 23, 1990) ("[P]laintiffs' resourcefulness in

procuring weapons left no reason to believe that showers, recreation yard, or visiting center are less

likely out-of-cell bases from which to stage an attack than any other areas within the prison.  The

amount of force or constraint used was possibly inadequate, if anything, in light of episodes of

escapes from handcuffs or even assault when cuffed) (attached)

At the very least, reasonable correctional officials could disagree over whether given

plaintiff's behavior and his ability to exercise in his cell, it violated plaintiff's constitutional rights to

have him recreate outside his cell, in handcuffs and leg irons during the time periods he was in Phase

I of the administrative segregation program at Northern.  Accordingly, the defendants have qualified

immunity with regard to plaintiff's complaint regarding recreation in restraints and summary

judgment should issue in defendants' favor.

## G.    THE PLAINTIFF'S CAUSE OF ACTION SHOULD BE DISMISSED AS HE HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES:

"A prisoner is precluded from filing a Section 1983 action concerning prison conditions until

such administrative remedies as are available have been exhausted." 42 U.S.C. § 1997e(a).

The PLRA "**removed court discretion** in this area by making exhaustion mandatory in

prisoner litigation." <u>Salahuddin v. Mead</u>, 174 F.3d 271, 274 n.1 (2d Cir. 1999)(emphasis added).

**The exhaustion requirement is mandatory**.    <u>Booth v. Churner</u>, 532 U.S. 731, 739

(2001)(attached). **"The PLRA's exhaustion requirement applies to all inmate suits about prison**

**life,** whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong. " <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002)(emphasis added). Moreover, the exhaustion requirement applies regardless of whether relief sought is provided through the administrative remedy. <u>Booth v. Churner</u>, 532 U. S. at 741.

When it is undisputed that plaintiff has not exhausted his administrative remedies, summary judgment should issue in favor of the defendants. <u>Richardson v. Goord</u>, 347 F.3d 431, 434 (2d Cir. 2003).

Here, Administrative Directive 9.6 par. 16 provides that an inmate may appeal a Level 1 decision to Level 2 appeals within 5 days of his receipt of the Level 1 decision. See Administrative Directive 9.6 attached hereto. The only grievance plaintiff filed between December 2000 and November 27, 2002, challenging the fact that he recreated in restraints was a grievance dated April 15, 2002. Statement of Material Facts Not in Dispute par. 38. This grievance was denied on May 3, 2002. Statement of Material Facts Not in Dispute par. 39. Plaintiff never appealed the denial of the grievance to Level II, the next level available to him. Statement of Material Facts Not in Dispute par. 40. Because it is undisputed that plaintiff never filed a Level II appeal. it is undisputed that plaintiff failed to exhaust his administrative remedies and summary judgment should issue in this matter in defendants' favor.

## **CONCLUSION**

Wherefore, all the foregoing reasons, the defendants respectfully move for summary judgment in this matter.

DEFENDANTS,
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:

Ann E. Lynch
Assistant Attorney General
Federal Bar No. ct08326
110 Sherman Street
Hartford, CT  06105
Telephone No.:  (860) 808-5450
Fax No. (860) 808-5591
E-mail:  ann.lynch@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid this _____ day of January 2004, to:

Earl Bates, Inmate No. 179696
Garner Correctional Institution
50 Nunnawauk Road
Newtown, Ct   06470

Ann E. Lynch
Assistant Attorney General

28