UNITED STATES DISTRICT COURT    FILED

DISTRICT OF CONNECTICUT    2004 AUG -5  P 4: 16

U.S. DISTRICT COURT
HARTFORD, CT.

EARL BATES              :
                        :           PRISONER
     v.                 :  Case No.  3:02cv974(AVC)(TPS)
                        :
WARDEN MYERS, et al.[1] :

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Earl Bates, currently confined at the Garner Correctional Institution in Newtown, Connecticut, commenced this civil rights action pursuant to 28 U.S.C. § 1915. He alleges that the defendants have forced him to recreate in handcuffs and leg irons during his confinement at Northern Correctional Institution. Pending before the court are cross motions for summary judgment. For the reasons set forth below, the defendants' motion is granted and the plaintiff's motion is denied.

Standard of Review

"The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v.

---

[1] The named defendants are Warden Myers and Captain Faneuff.

Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). Not all factual disputes are material. The court considers the substantive law governing the case to identify those facts which are material. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). An asserted dispute over a material fact is considered "genuine," so as to defeat the motion for summary judgment, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." McCarthy v. American Int'l Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002).

Even though the burden is on the moving party to demonstrate

the absence of any genuine factual dispute, the party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted). It "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2002) (internal quotation marks and citation omitted). Instead, the non-moving party must produce admissible evidence that supports its pleadings. See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968). A "'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252).

In reviewing a motion for summary judgment the court resolves all ambiguities and draws all inferences in favor of the nonmoving party. See Niagara Mohawk, 315 F.3d at 175. Thus, "[o]nly when reasonable minds could not differ as to the import

of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991). A motion for summary judgment cannot be defeated "merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

Facts[2]

The plaintiff was confined at Northern Correctional Institution from April 10, 1995 until November 27, 2002. The plaintiff was confined in Phase I of the administrative segregation program at Northern from April 10, 1995 to May 24, 1995, July 3, 1996 to September 9, 1997, February 13, 1998 to January 8, 1999, June 14, 1999 to February 26, 2001, April 24, 2001 to October 9, 2001 and March 14, 2002 to November 27, 2002. On November 27, 2002, the plaintiff was transferred to Garner Correctional Institution.

On April 24, 2001, Captain Faneuff was the unit manager of all phases of administrative segregation at Northern. The plaintiff claims that he has been forced to recreate wearing handcuffs and leg shackles during the periods that he was confined in Phase I of the administrative segregation program. After twenty minutes in restraints, his shoulders, arms, wrist and ankles started to ache. The plaintiff alleges that he was

---

[2]The facts are taken from the defendants' Local Rule 56(a)1 Statement of Material Facts Not in Dispute [doc. # 24-1], the Affidavits of Brian Murphy and Robyn DiGennaro [docs. ## 24-2 and 25], the exhibits attached to plaintiff's motion for summary judgment and memorandum in support of his motion for summary judgment [doc. # 26] and the plaintiff's verified complaint and exhibits attached to the complaint. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("a verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e).").

unable to properly exercise in restraints.

During his confinement at Northern, the plaintiff did 100 to 200 jumping jacks and 200 to 300 kicks or jumps in his cell every day. He also did 100 to 200 sit-ups and 100 to 200 push-ups in his cell every other day.

On September 8, 1998, the plaintiff filed a grievance claiming that he was unable to recreate wearing handcuffs and shackles. He stated that he had sent informal requests to Captains Mangiafico and Zacherwicks, Majors Bradnan, McDonald and Krajniak and Warden Gomez concerning his inability to exercise. He claimed that his health was deteriorating due to his inability to exercise. On September 28, 1998, Warden Giovanni Gomez denied the grievance. On September 30, 1998, the plaintiff appealed the denial of the grievance. On October 7, 1998, Warden Hector Rodriguez rejected the plaintiff's appeal and indicated that the denial could not be appealed to Level 3.

In June 1999, the plaintiff filed an action with the State of Connecticut Office of the Claims Commissioner alleging that Department of Correction officials had denied him recreation during the time periods that he was in Phase I of the administrative segregation program at Northern from April 11, 1995 to May 17, 1996, July 3, 1996 to September 4, 1997 and February 12, 1998 to January 7, 1999. In January 2001, the plaintiff withdrew his claim pursuant to a settlement agreement

with the State of Connecticut. On December 15, 2000, the plaintiff signed a release in connection with the settlement agreement stating that the settlement resolved all claims before the Connecticut Claims Commission.

The plaintiff filed inmate requests in September and October 2000, claiming that he had been denied recreation on several days. In January 2002, the plaintiff filed an inmate request claiming that he could not properly exercise in handcuffs and restraints. On April 15, 2002, the plaintiff filed a grievance concerning dates on which he was denied recreation in February, March and April 2002. A correctional official denied the grievance on May 3, 2002. Institutional records at Northern Correctional Institution reveal no record of a Level II or III appeal of the denial of the grievance.

## Discussion

The defendants move for summary judgment on six grounds. In opposition to their motion, the plaintiff filed his own motion for summary judgment. The court will address the plaintiff's motion first.

I.   Plaintiff's Motion for Summary Judgment

The plaintiff seeks summary judgment in his favor because defendants have failed to provide him with the opportunity to recreate without handcuffs and shackles and on some days failed to provide him with the opportunity to recreate at all.

Rule 56(a)1, D. Conn. Loc. Civ. R., provides: "There shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." In addition, "[e]ach statement of material fact in a Local Rule 56(a) Statement . . . must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)3.

Because the plaintiff has not filed a Local Rule 56(a)1 Statement, his motion for summary judgment is denied. The court will consider the plaintiff's motion and memorandum in support of the motion and the attached exhibits as a response to the defendants' motion for summary judgment.

II. The Defendants' Motion for Summary Judgment

The defendants raise six arguments in support of their motion for summary judgment: (1) the Eleventh Amendment bars any claims for damages against them in their official capacities; (2) some claims were included in cases previously settled and are barred by res judicata; (3) the plaintiff has failed to exhaust his administrative remedies; (4) the plaintiff's allegations fail to state a claim upon which relief may be granted; (5) the plaintiff alleges no actual injury suffered as a result of his

8

recreating in restraints; and (6) the defendants are protected by qualified immunity. The plaintiff contends that he has sufficiently alleged that the defendants violated the Eighth Amendment when they required him to recreate in handcuffs and shackles or failed to permit him to recreate at all on some days.

A.  Eleventh Amendment

The defendants first argue that any claims seeking damages against them in their official capacities are barred by the Eleventh Amendment. The plaintiff does not address this argument.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

The plaintiff sues the defendants in their official and individual capacities for injunctive relief and monetary damages. Because an award of damages against the defendants in their official capacities is barred by the Eleventh Amendment, the motion for summary judgment is granted as to all claims for damages against the defendants in their official capacities.

B.  Res Judicata

The defendants argue that the plaintiff's claims concerning his inability to recreate during the period from April 1995 through December 15, 2000 are barred by the doctrine of res judicata. The plaintiff responds that his complaint is not addressed to any claims of denial of recreation during the period from April 1995 to January 1999.

On December 15, 2000, the plaintiff signed a release settling four pending federal lawsuits and three pending state court actions in exchange for $3,300.00 and an agreement that the state would provide the plaintiff one telephone call per month to his mother while incarcerated. The release is attached to Deputy Commissioner Murphy's Affidavit. One of the state court actions referenced in the release was a Notice of Claim, Claim No. 18065, filed by the plaintiff with the Office of the Claims Commissioner on June 23, 1999. In the Notice of Claim, the plaintiff alleged that Department of Correction officials had denied him recreation during the time periods that he was in Phase I of the

administrative segregation program at Northern from April 11, 1995 to May 17, 1996, July 3, 1996 to September 4, 1997 and February 12, 1998 to January 7, 1999. The court takes judicial notice of the Notice of Claim.

The doctrine of res judicata precludes a party from litigating a claim more than once. Under the doctrine, a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in that action. See Allen v. McCurry, 449 U.S. 90, 94 (1980); Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995). Whether a claim that was not included in the previous action could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (internal citations and quotation marks omitted), cert. denied, 506 U.S. 1053 (1993). See also Joe's Pizza, Inc. v. Aetna Life & Casualty Co., 236 Conn. 863, 675 A.2d 441, 446 (Conn. 1996) (explaining that "the appropriate inquiry . . . is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding").

In addition, relitigation of a specific issue may be precluded under the doctrine of collateral estoppel where the

11

first action is a petition for writ of habeas corpus. See <u>Kulak v. City of New York</u>, 88 F.3d 63, 71-72 (2d Cir. 1996) (applying collateral estoppel to bar relitigation in a federal section 1983 action of issues previously decided in a state habeas proceeding). The important consideration is that the issue was fully addressed by the habeas court. <u>Id.</u> Finally, settlement and dismissal of an action operates as a decision on the merits of the claims and precludes relitigation of the claims. See <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 287 (2d Cir. 2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for <u>res judicata</u> purposes.")

Here, the plaintiff concedes that the recreation claims that were encompassed in his Notice of Claim No. 18065 in June 1999 were disposed of when he signed the release in December 2000. He states that the claims in the complaint filed in this action are "totally different" from the claims raised in the action which was disposed of pursuant to a settlement agreement in December 2000. Pl.'s Mot. Summ. J. at 2.

The court notes that the two defendants named in the present complaint are not referenced in the 1998 grievance and appeal of the grievance attached to the plaintiff's complaint. The fact that the plaintiff did not name Warden Gomez and other correctional officials who are referenced in the 1998 grievance

12

as defendants in this action further supports the plaintiff's statement that this case is distinguished from claims that would be subject to res judicata.

In view of the plaintiff's statement that the present action does not include the recreation claims set forth in the Notice of Claim No. 18065, and disposed of pursuant to the release signed in December 2000, the court considers those claims abandoned. Accordingly, the defendants' motion for summary judgment on the ground that res judicata bars any claims encompassed in the December 2000 settlement agreement is denied as moot. The court considers defendants' additional arguments as they relate to the remaining claims.

C.  Exhaustion of Administrative Remedies

The defendants argues that the plaintiff has failed to exhaust his administrative remedies as to his claims that the defendants denied him the opportunity to meaningful recreation or any recreation at all during the time period from December 16, 2000, to the date of the filing of this action in June 2002. The plaintiff does not specifically address this argument.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies

13

before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. During the relevant time period, section 6(A) provided that the following matters were grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department . . . .
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
6. Property loss or damage.

The plaintiff's claim that the defendants failed to provide him with the opportunity to recreate on various occasions, is included within the list of grievable matters at items 1 and 5. Thus, the plaintiff was required to fully exhaust his

14

administrative remedies for this claim before he filed his complaint.

Administrative Directive 9.6 sets forth a specific procedure that inmates must follow when submitting grievances. If attempts to resolve the matter informally are unsuccessful, an inmate can file a Level 1 grievance. The Level 1 grievance must be filed within thirty days from the date of the occurrence. If a Level 1 grievance is denied or if correctional officials fail to respond timely, the inmate must appeal the denial to Level 2. The appeal must be filed within five days from the receipt of the decision on the Level 1 grievance.

The defendants have submitted the affidavit of the grievance coordinator at Northern Correctional Institution. The grievance coordinator states that institutional record contains one grievance, dated April 15, 2002, challenging the recreation policy during the time period from December 15, 2000 to November 27, 2002, the day the plaintiff was transferred to Garner Correctional Institution. The grievance coordinator has no record of the plaintiff having appealed the denial of the grievance.

In support of his motion for summary judgment and in opposition to the defendants' motion for summary judgment, the plaintiff has submitted copies of the 1998 grievance and appeal of that grievance and his attempts to informally resolve the

issue in September and October 2000 and January 2002. The plaintiff has presented no evidence suggesting that he appealed the denial of the April 2002 grievance, as required under the institutional grievance procedure.

The court concludes that the plaintiff has failed to meet his burden of providing evidence in opposition to the motion for summary judgment demonstrating a genuine issue of material fact regarding his satisfaction of the exhaustion requirement. The defendants' motion for summary judgment is granted.[3]

## Conclusion

The plaintiff's motion for summary judgment **[doc. #26]** is **DENIED** and defendants' motion for summary judgment **[doc. #24]** is **GRANTED**. The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this 4th day of August, 2004, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge

---

[3] Because the court has granted the motion for summary judgment on Eleventh Amendment immunity and exhaustion grounds, the court does not address the defendants' remaining arguments.